FIRST NATIONAL BANK OF SULLIVAN, Plaintiff-Appellant, v. BRUMLEVE AND DABBS, Defendant-Appellee.

Fourth District   No. 4—88—0741

Opinion filed June 1, 1989.—Rehearing denied July 6, 1989.

Harlan Heller, of Harlan Heller, Ltd., of Mattoon, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (George W. Spellmire, Debra A. Winiarski, and Gerald Haberkorn, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff the First National Bank of Sullivan (FNBS) appeals an order dismissing its complaint with prejudice pursuant to section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). Plaintiff urges its complaint adequately pleaded a cause of action against the defendant Brumleve and Dabbs (BD) for accountant malpractice and the court erred in finding no proximate cause as a matter of law. We agree and reverse.

FNBS is a national banking corporation located in Sullivan, Illinois. BD is an accounting partnership with an office in Sullivan. Prior to June 30, 1984, FNBS hired BD to perform a certified audit of the financial condition of FNBS. Subsequent to June 30, 1984, BD performed the audit and prepared a report of the financial condition of FNBS for the board of directors of FNBS. According to the parties, the report reflected the financial condition of FNBS as of June 30, 1985.

On August 20, 1987, FNBS filed a complaint against BD, alleging BD's negligence in conducting the audit and preparing the report of the financial condition of FNBS caused FNBS to sustain huge losses. FNBS listed 15 separate acts of negligence in the complaint. Specifically, FNBS alleged BD: (a) failed and omitted to report improper officer loans; (b) failed and omitted to discover loans in excess of the loan limit; (c) failed and omitted to require reasonable reserves for loan losses; (d) failed and omitted to disclose improper management practices; (e) failed and omitted to review examinations of the bank made by the comptroller of the currency; (f) failed and omitted to properly classify assets; (g) improperly approved deficient reporting systems; (h) reported a profit when in fact, operations resulted in a significant and substantial net loss; (i) failed and omitted to report violations of laws and regulations; (j) failed to discover and report insider transactions; (k) improperly valued nonearning assets; (l) improperly reported accrued interest; (m) improperly capitalized interest; (n) failed to make proper tax computations; and (o) employed improper methods in establishing reserves for loan losses.

FNBS further alleged it relied upon BD's audit and report in its management of FNBS' business affairs, and as a result of BD's actions, FNBS was not informed of the true financial condition of

FNBS, sustained huge losses, was obliged to write off loans in excess of $2 million and an additional $1.5 million in loans is subject to criticism by Federal bank regulators.

On November 3, 1987, BD filed a demand for a bill of particulars, pursuant to section 2—607 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—607). In the bill, BD sought additional facts to support the complaint's allegations, including *inter alia* (1) when the financial condition of the bank was reported to the bank directors; (2) the names of bank directors and officers who relied upon BD's report; (3) the particular improper officer loans BD failed to report; (4) the loans in excess of the loan limit; (5) the amount of the loan reserves not revealed in the report; (6) the improper management practices not reported; (7) the assets improperly classified; (8) the bank's deficient reporting system; (9) facts supporting the allegation that BD reported a profit for FNBS when, in fact, FNBS suffered a substantial loss; (10) facts regarding insider transactions; (11) facts supporting the allegations of improper valuation of nonearning assets and improper reporting of accrued interest; and (12) details supporting the allegation of improper tax computations made by BD.

On January 4, 1988, FNBS filed its response to BD's bill and listed numerous facts to support its allegations of negligence against BD. Regarding the failure of BD to report improper officer loans, FNBS stated that two FNBS directors, John W. Hagen (JWH) and Jan W. Haegen (JH) and Maximiano F. Nunes (MFN), were owners of M.V. Executive, Inc. (MVE), an enterprise involved in building a charter fishing boat. FNBS described in detail in the response the loans given to these three individuals for their joint venture in MVE from August 25, 1982, through June 28, 1984. During this time, 24 individual loans were given either to MFN or JWH for the MVE venture, all alleged to be in excess of legal limits established by Federal banking regulations. All of the loans were later approved by the board of directors of FNBS.

FNBS detailed additional facts to support its allegation of BD's failure to discover loans in excess of FNBS' loan limit. According to FNBS, a bank customer, David Mobley, was also given loans in excess of legal limits and these loans were based on false financial statements.

FNBS also revealed that loans to two other bank customers, Southshores, Inc., and Paul Stone, were renewed by FNBS officers, without collateral, in support of its allegation that BD failed to disclose improper management practices. In further support of this allegation, FNBS stated:

(1) BD failed to disclose the relationship between FNBS officers and those officers at Windsor State Bank, which relationship resulted in detriment to FNBS.

(2) BD failed to disclose that FNBS officers transferred bad loans to trusts managed by FNBS.

(3) BD failed to disclose transactions with "Landers borrowers," where FNBS officers signed a subordination agreement in favor of another lending institution, causing FNBS to lose the security for loans given the Landers borrowers.

(4) BD failed to disclose that FNBS officers purchased municipal bonds inappropriate for a trust.

(5) BD failed to disclose that FNBS officers engaged in a prohibited transaction with a trust.

(6) BD failed to disclose that FNBS officers made loans for a stamp collection to two customers. Later, both loans had to be written off.

(7) BD failed to disclose that FNBS officers were loaning money in excess of the legal limits, were allowing borrowers "in excess" to borrow money in minor's names and later, the interest was capitalized and written off by the loan officers.

(8) BD failed to disclose untimely entries for transactions between FNBS and State Bank of Windsor.

(9) BD failed to disclose that FNBS officers were making loans to customers with preexisting loans in default or to customers without proper collateral.

(10) BD failed to disclose that FNBS officers regularly capitalized interest on loans.

(11) BD failed to disclose that FNBS officers failed to require, evaluate, or substantiate financial statements for loans.

FNBS also stated in its response to the bill that the practice by FNBS officers of capitalizing interest and "renewing" prior obligations was not reported by BD and led to improper classification of assets (notes), improper valuation of nonearning assets and improper reporting of accrued interest in BD's report. FNBS also stated the aforementioned improper management practices, not reported by BD, were involved with 42 separate loans made by FNBS officers.

On March 14, 1988, BD filed two motions to dismiss, one pursuant to section 2–619 and one pursuant to section 2–615 of the Civil Practice Law. (Ill. Rev. Stat. 1987, ch. 110, pars. 2–619, 2–615.) The trial court did not rule on the section 2–619 motion.

In its section 2–615 motion, BD alleged FNBS failed to allege facts to support its negligence claim against BD. Further, BD stated

that FNBS had failed to establish how the improper loaning of funds to directors-officers was related in any way to BD's actions in preparing the audit report and that FNBS failed to establish how BD could have prevented some of FNBS' loans from becoming uncollectible.

The trial court found plaintiff's complaint sufficient under Illinois fact-pleading rules but concluded that FNBS had failed to plead a cause of action against BD because FNBS could not establish that BD proximately caused FNBS' damages. Apparently, the trial judge believed that the complaint established that FNBS' own negligence contributed to its losses and BD could not have caused the huge losses sustained by the plaintiff.

FNBS urges the trial court erred in deciding proximate cause is a question of law. FNBS further contends that the trial court erred in relying on the imputation doctrine, which allows the negligence of corporate officers to be imputed to the corporation.

■ Motions to dismiss under section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) admit all well-pleaded facts and attack only the legal sufficiency of a complaint. (*Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 756, 502 N.E.2d 1096, 1097.) On review of a trial court's decision to grant or deny a section 2—615 motion, all allegations in a complaint are interpreted in a light most favorable to the plaintiff. (*Wait v. First Midwest Bank* (1986), 142 Ill. App. 3d 703, 705, 491 N.E.2d 795, 798.) Pleadings should be liberally construed with a view of doing substantial justice between the parties and "[n]o cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved to sustain it." *Golden Rule Life Insurance Co. v. Mathias* (1980), 86 Ill. App. 3d 323, 332, 408 N.E.2d 310, 317.

■ We first consider the proximate cause issue. Proximate cause relates to the foreseeability of injury from a negligent act or omission to act. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497.) Proximate cause is ordinarily a question of fact to be determined from all the attending circumstances. (*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 318, 45 N.E.2d 665, 675.) The *Merlo* court further stated:

> "[I]t can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." (*Merlo*, 381 Ill. at 318, 45 N.E.2d at 675.)

The supreme court in *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84, 117 N.E.2d 74, 80, reiterated:

"The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body."

■ We conclude the trial court erred in finding FNBS' damages could not have been caused, as a matter of law, by the actions attributed to BD in the complaint and the response to the bill. The complaint alleged that BD's report failed to inform the directors of FNBS of the true financial condition of FNBS. Further, because FNBS directors did not know of the true condition of FNBS, they failed to take action to lessen the losses sustained by the bank. As a further consequence of BD's negligence, FNBS alleged loans in excess of $2 million had to be written off. In its brief and during argument before this court, BD strenuously argued that the losses FNBS suffered were caused by FNBS' directors, who approved insider loans to other directors, knowing the loans were illegal at the time they were made. According to BD, there is nothing BD could have done to prevent the losses sustained as a result of fraudulent loans made before BD was retained by FNBS to perform the audit. We believe BD's arguments ignore the essence of FNBS' complaint and assume facts not alleged or admitted by FNBS.

A careful reading of the complaint and response reveals there are 15 separate allegations of negligence attributed to BD. The failure to disclose insider loans to directors in the report is only one allegation. Regarding this allegation, contrary to BD's claim, there is no allegation or admission by FNBS in its pleadings that the directors knew the loans were "illegal" when the directors approved them. Similarly, there is no allegation that the directors knew of (1) the other loans made in excess of the lending limit; (2) the improper management practices of renewing loans without collateral; (3) the improper transactions with trust accounts; or (4) the practice of capitalizing interest on loans.

BD urges that the losses claimed by FNBS in this action would have been incurred despite its audit report. We disagree. The audit report covered the period from June 30, 1984, to June 30, 1985. As a result of BD's report, FNBS could have sustained losses from other loans made in reliance on the report. On these pleadings, there exists the possibility that FNBS, believing its financial condition to be as reported by BD, continued to make loans in a similar manner and, thereafter, suffered more losses. By our statement regarding a possibility, we seek only to emphasize that FNBS should be given an opportunity to prove its case.

BD urges that the complaint establishes there is no proximate cause in this case and directs us to *Delmar Vineyard v. Timmons* (Tenn. App. 1972), 486 S.W.2d 914, and *Flagg v. Seng* (1936), 16 Cal. App. 2d 545, 60 P.2d 1004, as further support for its argument.

In *Delmar*, the court exhaustively reviewed the evidence presented *at trial* and concluded that any negligence on the part of the accountants was not proved to be the proximate cause of the damages claimed. The plaintiffs in *Delmar* claimed they relied upon the audit report which contained errors and omissions. The court found no credible evidence in the record to support plaintiff's assertions and reversed the trial court's determination in plaintiff's favor.

Similarly, in *Flagg*, the court reviewed the evidence presented *at trial* and concluded the accountant's actions in preparing an audit report had no causal connection to the company's losses. The court found that the evidence established the company's board of directors had full knowledge of the corporate books and gave their full consent to a practice of recording certain transactions in these books.

Both *Delmar* and *Flagg* are inapposite to the situation in the present case. Initially, a full trial was conducted in both cases and voluminous evidence was received. That evidence clearly established no causal connection between the auditor's actions and the claimed losses. Second, the issue of proximate cause in the two cases was decided as a question of fact.

In the instant case, the pleadings do not support a lack of proximate cause as a matter of law. The trial court's finding to the contrary was erroneous.

The parties also dispute whether the negligence of FNBS' directors is imputed to FNBS to bar this action. FNBS urges the imputation doctrine is not applicable to this case and relies on *Holland v. Arthur Andersen & Co.* (1984), 127 Ill. App. 3d 854, 469 N.E.2d 419. In its brief, BD urges this defense operates to bar this action and the facts to support the defense are apparent on the face of the complaint.

■■■ The imputation doctrine in accountant malpractice cases allows the wrongdoing of corporate officers to be attributed to the corporation to bar an action for damages if (1) the complaint alleges sufficient facts to establish that the officers and directors of a corporation did in a knowing fashion all that the accountant is charged with; and (2) that such actions by the corporation's top management amounted to fraud on behalf of the corporation. (*Holland*, 127 Ill. App. 3d at 865, 469 N.E.2d at 426.) We agree with FNBS that the pleadings do not support the availability of this defense. Assuming

that FNBS' directors were negligent, we further question the future application of this defense to this case where it appears the actions of the directors of FNBS clearly worked to the detriment and not the benefit of FNBS. Nevertheless, to whatever degree this defense was relied upon in this case, it was error at this stage of the proceedings.

■■ During argument before this court, FNBS urged that the dismissal with prejudice was erroneous in this case. According to FNBS, it requested leave to file an amended complaint as an alternative to a dismissal with prejudice under section 2—615. A dismissal with prejudice should not be entered unless it clearly appears that no set of facts could be established which would entitle a plaintiff to relief. (*Illinois Municipal League v. Illinois State Labor Relations Board* (1986), 140 Ill. App. 3d 592, 607-08, 488 N.E.2d 1040, 1051; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305, 312 N.E.2d 259, 262.) The trial court found FNBS' complaint was well pleaded, and we conclude it is sufficient to support an inference that one or more of BD's acts of negligence caused FNBS' losses. Accordingly, we reverse the order of dismissal and remand this cause for further proceedings.

Reversed and remanded.

LUND and GREEN, JJ., concur.