M G D, INC., f/k/a Dalen Trading Company, *et al.*, Plaintiffs-Appellants, v. DALEN TRADING COMPANY, f/k/a SP ACQ, Inc., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—90—1413

Opinion filed June 8, 1992.

Hayes & Power, of Chicago (Joseph A. Power, Jr., Paul L. Salzetta, and David A. Novoselsky, of counsel), for appellants.

Kwiatt & Silverman, Ltd., of Chicago (Scott E. Tuckman, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises from an action brought by plaintiffs, M G D, Inc. (MGD), formerly known as Dalen Trading Company (DTC-Illinois), and Mark Dalen (Dalen) against defendants Peter R. Harvey (Harvey) and The Vader Group, Inc. (Vader), for tortious interference with contractual relations. The trial court dismissed counts VII, VIII and IX of plaintiffs' second amended complaint pursuant to section 2—619(a)(9) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)) for failure to state a cause of action.[1] We affirm.

The following facts are relevant to this appeal. Vader, formerly known as Magic Silk, Inc. (Magic Silk), is a New York corporation authorized to do business in Illinois. Harvey is the owner and chief executive officer of Vader. Prior to December 30, 1987, Magic Silk was a vendor and supplier of goods to plaintiffs. Ozite Corporation (Ozite) is a Texas corporation, and SP ACQ, Inc. (SP ACQ), a Delaware corporation now known as Dalen Trading Company (DTC-Delaware), is a

---

[1]Counts I through VI of plaintiffs' second amended complaint, directed against DTC-Delaware and Ozite, are not involved in this appeal.

wholly owned subsidiary of Ozite. Silk Plants Etc. Franchise Systems, Inc. (Silk Plants), an Illinois corporation and a wholly owned subsidiary of DTC-Delaware is engaged in the business of wholesaling, purchasing, importing, selling and distributing silk plants, silk flowers, plant foliage and trees and franchising operations.

On January 7, 1987, Dalen, DTC-Illinois and Silk Plants, as sellers, entered into a "Stock Asset and Purchase Agreement" with SP ACQ and Ozite as purchasers. Pursuant to the agreement, Dalen, DTC-Illinois and SP ACQ agreed to sell all assets of DTC-Illinois and all outside shares of stock of SP ACQ owned by Dalen. SP ACQ agreed to pay DTC-Illinois and Dalen $5 million; $1 million at closing and the balance in four installments of $1 million, as evidenced by four promissory notes. In addition, Dalen entered into a "Consultant and Non-Competition Agreement" with SP ACQ, under which Dalen promised to provide his services as a consultant for a period of five years, at an annual salary of $250,000 and additional "earnout" compensation.

On January 8, 1987, MGD and Dalen entered into a "Security Agreement" as secured parties with SP ACQ and Silk Plants to secure payment and performance of the "Promissory Notes and Consulting Agreement." In addition, Ozite entered into a subordinated pledge agreement with Dalen and MGD, whereby Ozite pledged 100% of shares of capital stock of SP ACQ to secure the performance and payments of the promissory notes and consulting agreement and other obligations. On that same date, SP ACQ entered into a similar "Subordinated Pledge Agreement" with MGD and Dalen, pledging 100% of the shares of capital stock of Silk Plants.

Between January and November 1987, Harvey sold the assets of Magic Silk and changed the name to Vader. After the sale, Harvey asked Dalen what amount he would require to be bought out of the stock asset and purchase agreement and the consulting and noncompetition agreement. Dalen requested $7 million.

On December 1, 1987, the chief executive officer of Silk Plants informed Dalen that Silk Plants was losing money and that Harvey wanted Dalen to be a financial but not actual participant or consultant in a new ownership of Silk Plants and DTC-Delaware. Dalen rejected Harvey's offer. On December 17, 1987, defendants Ozite and DTC-Delaware (SP ACQ) announced their intention by letter to MGD and Dalen to breach the stock asset and purchase agreement.

MGD and Dalen's first amended complaint, filed June 7, 1989, alleged tortious interference with contracts in counts VII, VIII and IX. Harvey moved to dismiss counts VII, VIII and IX under section 2—

619(a)(9) asserting that his actions were protected by a qualified privilege. The trial court granted Harvey's motion and granted plaintiffs leave to file amended counts VII, VIII and IX.

On December 20, 1989, plaintiffs filed their second amended complaint. In count VII MGD and Dalen allege that: (1) Harvey knew of the above agreements and that he "intentionally interfered with the contractual relationship" between plaintiffs and Ozite, DTC-Delaware and Silk Plants by appropriating revenues and funds from the assets of SP ACQ and Silk Plants and diverting funds to Magic Silk; (2) Harvey "intentionally and knowingly without reasonable justification" induced SP ACQ, Silk Plants and Ozite to breach their contractual obligations with MGD and Dalen; and (3) as a direct and proximate result of defendants' intentional interference, MGD and Dalen sustained over $4 million in damages. In counts VIII and IX plaintiffs allege the same facts, requesting punitive relief of $10 million, and an unspecified judgment for $10 million, respectively.

Harvey moved to dismiss plaintiffs' second amended complaint asserting, as previously, that pursuant to section 2—619(a)(9) of the Code of Civil Procedure, plaintiffs' claim was barred by a qualified privilege. In addition, Harvey's motion incorporated his own affidavit and the transcript of the proceedings of the November 8, 1989, hearing on his previous motion to dismiss. In his affidavit, Harvey stated that he is on the board of directors of both Silk Plants and DTC-Delaware (SP ACQ), and is chairman of the board of directors, president and a major shareholder of Vader. Following a hearing, the trial court dismissed counts VII, VIII and IX on the ground that plaintiffs failed to adequately allege Harvey's intent to interfere with plaintiffs' contractual relationships. Plaintiffs' timely appeal followed.

On appeal, plaintiffs contend that the trial court erred in dismissing counts VII, VIII and IX of their second amended complaint for failure to state a cause of action for tortious interference with contract. Where the issue before the reviewing court is whether the trial court properly dismissed a complaint, all well-pleaded facts and all reasonable inferences that could be drawn from those facts are construed as true and correct. (*Philip I. Mappa Interests, Ltd. v. Kendle* (1990), 196 Ill. App. 3d 703, 554 N.E.2d 1008.) Although pleadings are to be construed liberally, plaintiff remains obligated to plead facts necessary for recovery. Liberal construction cannot cure a complaint which lacks sufficient factual averments. A complaint fails to state a cause of action if it does not contain factual allegations in support of every element of the particular cause of action. *Mappa*, 196 Ill. App. 3d at 708.

■ It is generally recognized in Illinois that the elements of the tort of intentional interference with existing contract rights are "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *H P I Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 154-55, 545 N.E.2d 672.

■ A qualified privilege bars liability for tortious interference. (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 249, 552 N.E.2d 973, 987.) Illinois courts recognize a privilege for corporate officers and directors to use their business judgment and discretion on behalf of their corporations. (*H P I*, 131 Ill. 2d at 157.) The duty of corporate officers and directors to their corporations' shareholders outweighs any duty they may have towards parties contracting with the corporation. *H P I*, 131 Ill. 2d at 157, quoting *Swager v. Couri* (1979), 77 Ill. 2d 173, 395 N.E.2d 921; *Mannion v. Stallings & Co.* (1990), 204 Ill. App. 3d 179, 561 N.E.2d 1134.

In the present case, Harvey is on the board of directors of both Silk Plants and DTC-Delaware (SP ACQ) and is chairman of the board of directors, president and a major shareholder of Vader. Harvey has a duty to the shareholders of these corporations to exercise business judgment in managing their affairs. Therefore, Harvey's conduct in this case was privileged.

■ To overcome the qualified privilege of a corporate officer, a plaintiff must show that the corporate officer's action was done without justification or with actual malice. (*Mittelman*, 135 Ill. 2d at 249.) "Actual malice" is a positive desire or intent to injure another, and in the context of a charge of tortious interference with a contractual relationship, the plaintiff must show that the desire to harm was unrelated to the interests of the corporation. (See *Chapman v. Crown Glass Corp.* (1990), 197 Ill. App. 3d 995, 557 N.E.2d 256; *Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391, 515 N.E.2d 1047.) Bare allegations of actual malice, unsupported by facts, are not sufficient to negate the protections of privilege or unjustified conduct. *Genelco, Inc. v. Bowers* (1989), 181 Ill. App. 3d 1, 7, 536 N.E.2d 783.

Plaintiffs rely on *Mittelman* to support the contention that the allegations in their second amended complaint are sufficient to overcome a qualified privilege. However, *Mittelman* is distinguishable on the facts. In *Mittelman*, the plaintiff's allegations of actual malice were supported

by specific and definite factual allegations, which included details of specific actions taken by the plaintiff, and reported to the defendants, to establish that Witous' allegedly slanderous remarks were false and that the defendants knew them to be false. By contrast, plaintiffs' allegations here made no reference to any specific actions by Harvey supporting the allegations of actual malice.

Plaintiffs' further reliance on *General Capital Corp. v. United States Family Sporting Goods, Inc.* (N.D. Ill. 1972), 351 F. Supp. 364, is unavailing. *General Capital* stands for the proposition that intentional and malicious interference may be found where an individual misappropriates corporate assets for his own personal use, in breach of his fiduciary responsibility to the corporation. *General Capital*, 351 F. Supp. at 368, citing *Winger v. Chicago City Bank & Trust Co.* (1946), 394 Ill. 94, 67 N.E.2d 265.

■ In the present case, plaintiffs have not alleged that Harvey appropriated any funds from his companies for his own personal use. Counts VII, VIII and IX of plaintiffs' second amended complaint merely allege that Harvey was aware of the contracts between plaintiffs and the various companies; that assets were transferred from SP ACQ and Silk Plants to Magic Silk; that Harvey caused the contracts between plaintiffs and the companies to be breached "without reasonable justification"; and that as a result, plaintiffs suffered damages. There are no allegations that Harvey's actions were illegal, motivated by a desire for personal gain, or intended harm to plaintiffs, as required to prove actual malice.

The trial court found that the allegations of plaintiffs' second amended complaint simply indicated that Harvey's action affected the financial integrity of the corporation, not an intention to induce a breach of a particular contract. Plaintiffs have not shown that Harvey's actions were totally unrelated to the interest of the corporations or unjustified. Thus, the allegations are merely conclusory statements, without supporting facts. As such, plaintiffs' allegations are insufficient to overcome Harvey's qualified privilege and state a cause of action for intentional interference with contractual rights. See *H P I*, 131 Ill. 2d at 159.

Accordingly, we affirm the trial court's order dismissing counts VII, VIII and IX of plaintiffs' second amended complaint for failure to state a cause of action for tortious interference with contractual relations.


Affirmed.


BUCKLEY, P.J., and O'CONNOR, J., concur.