In the Matter of SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff,

v.

R.D. KUSHNIR & CO., Defendant.

Securities Investor Protection Corporation, as Trustee for the Liquidation of R.D. Kushnir & Co., Plaintiff,

v.

Adler Drobny Fischer LLC, Larry D. Adler, and Aaron J. Fischer, Defendants.

Adversary Nos. 99 A 858
SIPA, 01 A 00485.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 12, 2002.

Melanie Rovner Cohen, Tracy L. Treger, Altheimer & Gray, Chicago, IL, Stephen P. Harbeck, Karen A. Caplan, Securities Investor Protection Corporation, Chicago, IL, for Plaintiff.

Fred R. Harbecke, Ronald LePinskas, Joseph J. Border, Lord Bissell & Brook, Chicago, IL, for Defendants.

## MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

Plaintiff Securities Investment Protection Corporation ("SIPC") filed this Adversary Complaint on May 22, 2001, as trustee for R.D. Kushnir & Co. ("RDK"), an Illinois Corporation. SIPC's Complaint charges the accountant firm Adler Drobny Fischer, LLC ("ADF") and two of its members Larry D. Adler ("Adler") and Aaron J. Fischer ("Fischer") (collectively "Defendants") with negligence (Count I), breach of contract (Count II), negligent misrepresentation (Count IV), and fraudulent conveyance (Count V and VI). SIPC also charges Adler and Fischer with inducement of breach of contract (Count III).

Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) [Rule 7012 Fed.R.Bankr.P.]. For reasons discussed below, Defendants' motion to dismiss is denied as to all Counts except Count III. However, unless amended Count II, III, V, and VI are filed in accord with standards set forth, the individual Defendants will be dismissed from those Counts and Count III will be dismissed.

## JURISDICTION

This case was referred here by District Court order after SIPC initiated a liquidation proceeding against RDK pursuant to Section 78eee(b)(1) of the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa, *et seq.* ("SIPA"). District Judge Shadur appointed SIPC as trustee to oversee the liquidation of RDK pursuant to SIPA § 78eee(b)(3) and removed the case to this court pursuant to SIPA § 78eee(b)(4). Section 78eee(b)(4) commands that after issuance of a protective order and appointment of a trustee, the district court shall remove the entire case to the bankruptcy court for that district, which will then have "all of the jurisdiction, powers, and duties conferred by this chapter" upon the district court. Thus, this court has jurisdiction to hear this matter, and venue lies here pursuant to 15 U.S.C. § 78eee(b)(4).

## FACTS ALLEGED

RDK was an "introducing broker" which introduced investors wishing to buy securities to a "clearing broker" which carried out the actual trade. RDK transmitted orders from its customers to Wexford Services Corporation ("Wexford"), the clearing broker, which bought the ordered stock with funds on deposit in customer accounts at Wexford. RDK earned a commission on each order it channeled to Wexford.

Although the customer accounts were maintained on Wexford's computer system, employees at RDK allegedly had access to the accounts, as well as to an RDK error account. SIPC asserts that between the summer of 1997 and May of 1998 an RDK employee named Paul Carney ("Carney") used this access to make unauthorized

trades on customer accounts held by Wexford. Carney allegedly caused more than $2,000,000 in losses to RDK and its customers by engaging in "highly speculative" options trades. Carney was purportedly able to conceal his activity by deleting the losses incurred from these trades from one customer's account and transferring the losses to another customer's account or to the RDK error account. Thus, customers would allegedly receive falsified account statements from Wexford. In May of 1998 Carney assertedly confessed his misconduct to his superiors at RDK and resigned.

SIPC alleges that ADF provided accounting services to RDK for the years 1996 and 1997. During this time, Adler was the engagement partner primarily responsible for the 1996 and 1997 audits of RDK. Fischer was the reviewing audit partner for both audits. SIPC asserts *inter alia* that all Defendants failed to follow Generally Accepted Accounting Standards ("GAAS") and SEC rules governing financial audits. Consequently, the audits conducted by Defendants failed to disclose Carney's fraudulent activity and failed to disclose the absence of internal controls at RDK that might otherwise have thwarted Carney's scheme. SIPC contends that a "major part" of the losses sustained by RDK could have been prevented if Defendants had properly performed the 1997 audit which was completed in February of 1998. SIPC avers that it has paid $252,715.52 in cash payments to customers of RDK, $437,661.94 to buy securities to replace securities of RDK customers, and over $1,000,000 in administrative and professional fees. SIPC also contends that after Carney's activities were revealed, RDK paid ADF an additional $25,000 for a special audit to investigate the matter. However, SIPC contends that no audit report was ever produced by ADF. Therefore, SIPC argues that RDK did not receive any value in return for the special audit payment.

### Applicable Standards for A Motion to Dismiss under Rule 12(b)(6)

■ Fed.R.Civ.P. 12(b)(6) [Rule 7012 Fed.R.Bankr.P.] allows a defendant to test the legal sufficiency of a complaint. *Triad Associates, Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). The court ruling on a motion to dismiss must determine whether there is a basis for the case to go forward. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss should only be granted if it appears that there is no set of facts under which the plaintiff could prevail. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-plead facts alleged in the complaint are taken as true, and all reasonable inferences derived therefrom are construed in favor of the plaintiff. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.1993). To survive a motion to dismiss, a complaint must set forth a short plain statement that informs a defendant of the charges and basis of charges contained in the complaint. Fed.R.Civ.P. 8(a)(2) [Rule 7008 Fed. R.Bankr.P.]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, even under the liberal pleading standard of Fed.R.Civ.P. 8(a)(2), the plaintiff cannot rest on mere conclusory statements. *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 859 (7th Cir.1999). The complaint must provide facts from which the conclusions averred in the complaint are derived. *Palda v. General Dynamics Corp.*, 47 F.3d 872, 874–75 (7th Cir.1995).

### DISCUSSION

*Count I—Negligence*

■ Count I essentially alleges that ADF and the individual Defendants com-

mitted professional malpractice through negligence. SIPC avers that all Defendants owed a duty to RDK to perform audits with due care in accordance with GAAS and Securities Exchange Commission ("SEC") rule 17 CFR § 240.17a–5 and pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78q(a)(1)(2). SIPC further alleges that all Defendants breached that duty by failing to perform audits with skill, thoroughness, diligence, and professional competence. As a result of Defendants' asserted malpractice, RDK claims that it sustained damages. SIPC seeks to hold all Defendants jointly and severally liable for these damages.

■ ADF and RDK dealt with each other in Illinois, so the contract and tort law of that state applies. In Illinois, to prevail on an action for contract breach or negligence, Plaintiff must show that Defendants owed it a duty under contract or a duty of care but breached that duty, and an injury to Plaintiff was proximately caused by the breach. *Hills v. Bridgeview Little League Assoc.*, 195 Ill.2d 210, 253 Ill.Dec. 632, 745 N.E.2d 1166, 1178 (2001). SIPC asserts that Defendant ADF owed a contractual duty to RDK to perform the audits for the years 1996 and 1997 with due care and competence as prescribed by SEC 17 CFR § 240.17a–5 and GAAS accounting procedures. It also claims that the individual Defendants also owed a duty of due care and competence that they breached in their work.

The Supreme Court of Illinois has held that individual accountants, like lawyers, owe their clients a professional duty outside of contractual obligations to observe reasonable professional competence. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, 515 (1994) ("This duty to observe reasonable professional competence exists independently of

any contract."). Thus, in addition to the contractual obligation between RDK and ADF and the duty of care owed by ADF thereunder, Defendants Adler and Fischer each had an independent professional duty to perform competently the audits done by them for RDK. SIPC contends that the individual Defendants as well as RDF as a firm breached their respective professional duties by failing to perform their work on the audits in accordance with SEC 17 CFR § 240.17a–5 or GAAS accounting procedures. It avers that as a result of the negligent work by all Defendants, RDK lacked sufficient internal controls to detect Carney's fraudulent conduct which resulted in RDK being rendered insolvent and caused losses in excess of $2,000,000. As trustee for RDK, SPIC has thereby alleged facts under Count I that entitle it to survive Defendants' motion to dismiss.

*Count II—Breach of Contract*

■ Count II alleges that ADF entered into a valid and enforceable contract to provide auditing services for RDK. SIPC avers that the same facts asserted in Count I constitute breach of this contract and seeks to hold all Defendants jointly and severally liable for damages to be adduced at trial.

■ Under Illinois law, there are four elements needed to plead a breach of contract claim: (1) existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by defendant; and (4) damages to plaintiff as a result of defendant's breach. *Nielsen v. United Servs. Auto Assoc.*, 244 Ill.App.3d 658, 183 Ill.Dec. 874, 612 N.E.2d 526, 529 (2nd Dist.1993). SIPC has pleaded facts in Count II to satisfy those requirements as to ADF. Defendant ADF entered into a contract to audit RDK's financial statements for 1996 and 1997 and Defendants assertedly breached the contract or caused that contract to be breached by failing to

follow accepted accounting procedures with due care and competence, and that in consequence RDK incurred damages in excess of $2,000,000.

■■■ Defendants Adler and Fischer argue that they should not be subject to this charge because RDK's engagement was not with them personally, but was with their company ADF. Although generally true that corporations are distinct legal entities separate from their officers, shareholders, and directors, Illinois may allow the corporate veil to be pierced to avoid injustice. The corporate form may be disregarded when (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) the continued adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice. *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565, 569–70 (7th Cir.1985).

ADF is alleged to be an Illinois limited liability company. Under the Illinois Limited Liability Act ("Act"), 805 ILCS 180/10–10 (as amended effective January 1, 1994):

§ 10–10. Liability of members and managers.

(a) Except as otherwise provided in subsection (d) of this Section, the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager.[1]

(b) (Blank).

(c) The failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business is not a ground for imposing personal liability on the members or managers for liabilities of the company.

(d) All or specified members of a limited liability company are liable in their capacity as members for all or specified debts, obligations, or liabilities of the company if:

(1) a provision to that effect is contained in the articles of organization; and

(2) a member so liable has consented in writing to the adoption of the provision or to be bound by the provision.[2]

It would seem from the foregoing that "members" or "managers" of an Illinois limited liability company cannot be held liable for the mere failure to observe corporate formalities or repayment, but nothing in the statute bars piercing of the "corporate veil" for other grounds on which that may be done for ordinary corporations. But it is also clear that the individual Defendants here may not be held liable for breach of a contract they did not sign individually unless the corporate structure can be swept aside.

The current Act further provides:

an Illinois business corporation is liable in analogous circumstances under Illinois law."

---

**1.** P.A. 90–424 rewrote this section, which prior thereto read:

"Liability of members and managers."

"(a) A member of a limited liability company shall be personally liable for any act, debt, obligation, or liability of the limited liability company or another member or manager to the extent that a shareholder of

**2.** Plaintiff has not pleaded facts triggering liability of the individual Defendants under part (d) of the quoted provision.

180/13–5. Agency of members and managers

§ 13–5. Agency of members and managers.

(a) Subject to subsections (b) and (c):

(1) Each member is an agent of the limited liability company for the purpose of its business, and an act of a member, including the signing of an instrument in the company's name, for apparently carrying on, in the ordinary course, the company's business or business of the kind carried on by the company binds the company, unless the member had no authority to act for the company in the particular matter and the person with whom the member was dealing knew or had notice that the member lacked authority.

(2) An act of a member that is not apparently for carrying on, in the ordinary course, the company's business or business of the kind carried on by the company binds the company only if the act was authorized by the other members.

(b) Subject to subsection (c), in a manager-managed company:

(1) A member is not an agent of the company for the purpose of its business solely by reason of being a member. Each manager is an agent of the company for the purpose of its business, and an act of a manager, including the signing of an instrument in the company's name for apparently carrying on, in the ordinary course, the company's business or business of the kind carried on by the company binds the company, unless the manager had no authority to act for the company in the particular matter and the person with whom the manager was dealing knew or had notice that the manager lacked authority.

(2) An act of a manager which is not apparently for carrying on, in the ordinary course, the company's business or business of the kind carried on by the company binds the company only if the act was authorized under Section 15–1.

(c) . . .

P.A. 87–1062, Art. 13, § 13–5, added by P.A. 90–424, § 10, eff. Jan. 1, 1998.

* * *

180/13–10. Limited liability company liable for member or manager's actionable conduct

§ 13–10. Limited liability company liable for member · or manager's actionable conduct. A limited liability company is liable for loss or injury cause to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a member or manager acting in the ordinary course of business of the company or with authority of the company.

P.A. 87–1062, Art. 13, § 13–10, added by P.A. 90–424, § 10, eff. Jan. 1, 1998.

A recent opinion in our District Court observed that

" . . . as to such juridical entities *Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir.1998) (case citations omitted) teaches":

This animal is like a limited partnership; the principal difference is that it need have no equivalent to a general partner, that is, an owner who has unlimited personal liability for the debts of the firm. See generally Larry E. Ribstein & Robert R. Keatinge, *Ribstein and Keatinge on Limited Liability Companies (1988 ).*

*Victory Packaging v. Jackson Moving Services,* No. 01 C 529, 2001 WL 103410 *1 (N.D.Ill.) (J. Shadur). *See also* "A primer

on the amended Illinois Limited Liability Company Act." William A. Price, 11 DCBA Brief 22 (1998).

Thus, it would appear that ADF was and is liable for acts or omissions of the individual Defendants in the course of their audit work.

SIPC did not allege that either Defendant Adler or Fischer was party to the engagement with RDK, and also failed to assert any pleading showing that ADF is the alter-ego of these Defendants such that the corporate structure should be ignored. Dismissal should not be granted unless there appears to be no set of facts that would entitle SIPC to relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. SIPC's failure to plead the requirements for piercing the corporate veil does not yet warrant dismissal of the breach of contract charge against Adler and Fischer. *See Grumhaus v. Comerica Securities, Inc.,* 223 F.3d 648, 652 (7th Cir.2000) (federal courts have abandoned the "arcane and overly technical system of code pleading and causes of action" and look instead to substance of claim), but requires that Plaintiff be given leave to amend this Count. SIPC has asserted that Adler and Fischer were directly responsible for the audits performed at RDK by acting as the engagement partner and auditing partner, respectively. While not yet adequately pleaded, it is at least conceivable that SIPC could plead and show that they are individually responsible for breaching the contract with RDK and that they should be held personally liable. Thus, Defendants' motion to dismiss Count II as to Adler and Fischer will not presently be allowed. However, absent the necessary amended pleading, the individual Defendants must be dismissed from this Count.

*Count III—Interference with Contract Rights*

 Count III alleges in paragraphs 38 through 41 that Defendants Adler and Fischer induced ADF to Breach its contract with RDK:

38. At all times, Adler and Fischer knew of the existence of the valid and enforceable contracts between ADF and RDK created by the engagement agreements.

39. At all times, Adler and Fischer knew that serious harm was substantially likely to occur to RDK as a result of material breaches of the audit engagement agreements as occurred.

40. Adler and Fischer were the principal and responsible actors for ADF in respect of performance of the engagement agreements and acted not to serve any interest of ADF but in wanton disregard of the duties imposed by the audit engagement agreements.

41. Without justification and without privilege to do so, Adler and Fischer knowingly caused and induced ADF to breach the audit engagement agreements with RDK.

SIPC seeks unspecified damages against Adler and Fischer.

 Under Illinois law to sustain a cause of action for intentional interference with contract rights, SIPC must allege the following: (1) Existence of a valid and enforceable contract between RDK and ADF; (2) Defendants' awareness of the contractual relationship; (3) Defendants' intentional and unjustified inducement of breach; (4) Subsequent breach by ADF; and (5) Damages to RDK as a result. *MGD, Inc. v. Dalen Trading Co.,* 230 Ill. App.3d 916, 172 Ill.Dec. 736, 596 N.E.2d 15, 17 (1st Dist.1992). Officers of a corporation have a qualified privilege against liability for tortious interference. *Id.,* 172 Ill.Dec. 736, 596 N.E.2d at 18. To over-

come the qualified privilege the plaintiff must assert and plead that the corporate officers acted with malice and without justification. *Id.* Bare allegations unsupported by facts to show that the officers so acted are insufficient to disregard the privilege. *Id.; George A. Fuller Co. v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326, 1333 (7th Cir.1983).

Even under the liberal pleading standards of Fed.R.Civ.P. 8(a)(2) [Rule 7008 Fed.R.Bankr.P.], Plaintiff must allege facts sufficient to notify Defendants of the basis of charges leveled against them. SIPC's conclusory allegations that Adler and Fischer induced ADF not to perform under its contract with RDK in "wanton" disregard of their duties are insufficient to survive a motion to dismiss.

SIPC argues that the holding in *George A. Fuller* was effectively overruled by the Supreme Court decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), where the court rejected an attempt to apply a heightened pleading standard for civil rights suits against local governments. *Leatherman* held that federal notice pleading only required "a short and plain statement showing that the pleader was entitled to relief." *Id.* at 168, 113 S.Ct. 1160. Thus, that opinion reaffirmed that there is a single pleading standard for all federal cases, which is enunciated in Fed.R.Civ.P. 8(a)(2). However, the holding in that opinion did not obviate the need for plaintiffs to plead facts sufficient to inform defendants of the general factual basis for the actions against them. Merely pleading that the individuals "knowingly" and with malice (though malice is not yet pleaded at all) interfered with the contract of their accounting firm with RDK informs them of nothing. How did they interfere? What facts show they acted with malice?

■ SIPC also relies on *Equis Corp. v. The Staubach Company,* 2000 WL 283982, No. 99 C 7046 (N.D.Ill.), asserting that the opinion sustained "a conclusory pleaded complaint" in a tortious interference case. Although dicta in *Equis* stated that conclusory pleading is sufficient under federal rules, the opinion shows that the plaintiff there pleaded specific facts to support its tortious interference claim: "The complaint also describes the course of conduct Staubach [defendant] engaged in when it intentionally and unjustifiably induced the breach, i.e. impugning *Equis'* [plaintiff's] viability, advising Equis' representatives that other representatives would be leaving, and telling one Equis' customer that Equis was financially unstable." *Id.* Thus, that case is distinguishable from the present case where SIPC alleged no facts to show that Adler or Fischer intentionally or unjustifiably interfered with the RDK contract or did so with malice. Conclusions alone without pleading some facts that the conclusions are derived from will not survive a motion to dismiss. *Palda v. General Dynamics Corp.,* 47 F.3d 872, 874–75 (7th Cir.1995).

■ A plaintiff is generally required to allege some facts that will notify the defendant of the basis of the charges and which will enable the court to determine whether the case should go forward. *See Burton v. Sheahan,* 68 F.Supp.2d 974, 975–78 (N.D.Ill.1999) (discussing the different approaches among opinions in this circuit applying the standard of review to 12(b)(6) motions and the notice pleading requirements). Mere conclusory accusations serve neither function. The present pleading does not inform Adler and Fischer of the alleged wrongs they must defend against and are therefore insufficient. Thus, the Complaint does not show why they should be stripped of the privilege given to corporate officers against tortious

interference claims. Put succinctly, a privilege that yields to bald accusations is no privilege at all. Count III must therefore be amended if the Plaintiff can do so, or else it will be dismissed.

*Count IV—Negligent Misrepresentation*

■ Count IV alleges that Defendants made negligent misrepresentations to RDK. Specifically, SIPC pleads that all Defendants represented that (a) ADF had performed its audits in accordance with GAAS which are promulgated by the American Institute of Certified Public Accountants to govern audits; (b) RDK's financial statements fairly presented the financial position of and results of operations and cash flows in accordance with Generally Accepted Accounting Principles ("GAAP") for reporting a company's financial position; (c) no material weaknesses in internal controls, which would have been observed in the course of an audit in compliance with GAAS, had been noted as a result of such audit; and (d) RDK's net capital was in compliance with regulatory requirements. ADF's own engagement letter which accompanies the Complaint showed a duty to communicate accurate information in accordance with GAAS principles following the 1997 audit. It is further pleaded that Defendants intended RDK to rely on its representations and that RDK did in fact rely on representations made by Defendants. Finally, SIPC avers damages proximately cause by RDK's reliance on representations contained in the opinion letters.

■ As discussed above, individual accountants can be held personally liable in tort under Illinois law. *Congregation*, 201 Ill.Dec. 71, 636 N.E.2d at 515 ("Tort law has traditionally afforded and avenue of recovery for accountant malpractice . . . ."). Thus, Plaintiffs can assert joint liability against ADF and Defendants Adler and Fischer on its negligent misrepresentation charge.

■ The elements for negligent misrepresentation are the same as a cause of action for fraudulent misrepresentation except that the knowledge requirement is not the same. Defendants' carelessness or negligence in ascertaining the truth of their statements is enough for a cause of action for negligent misrepresentation. *Board of Educ. of City of Chicago v. A, C, and S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580, 591 (1989). To succeed in a suit for negligent misrepresentation the plaintiff must allege and prove: (1) a false statement of material fact; (2) defendant's carelessness or negligence in ascertaining the truth of the statement; (3) a duty on the part of the defendant to communicate accurate information; (4) intention to induce the plaintiff to rely on the statement; (5) plaintiff's reliance on the statement; and (6) resulting damages. *Id.*

SIPC alleges that Defendants made false statements in the form of opinion letters which were used by RDK to comply with the requirements of the SEC to operate its business, and for its internal affairs. Therefore, SIPC has successfully pleaded a cause of action for negligent misrepresentation.

*Count V and VI—Fraudulent Conveyance*

■ Counts V and VI allege fraudulent conveyance pursuant to 11 U.S.C. § 548 (Count V) and 740 ILCS 160/1 *et seq.* (Count VI). SIPC charges that RDK paid ADF $25,000 for a "special audit" after Carney informed RDK of his fraudulent activity. According to SIPC, ADF was engaged to do this audit in April of 1998 and the $25,000 fee was paid to ADF sometime after RDK ceased operations on June 30, 1998. Thus, SIPC avers that RDK was insolvent when this payment was made. SIPC also contends that it has

requested all reports or work papers generated by ADF as result of its special audit. Yet SIPC states that "other than a relatively few documents identified as work papers, no findings or reports have been produced."

Plaintiff seeks to hold all Defendants jointly liable for the alleged fraudulent transfer. However, Plaintiff has not averred facts to show why Defendants Adler and Fischer are individually liable on this charge because they are not charged with receipt of the payment. Nor has Plaintiff asserted that the corporate veil should be pierced so that ADF may be treated as the alter-ego of these Defendants. But as stated above, for purposes of a motion to dismiss, a complaint may not be dismissed unless it appears from the complaint that there is no set of facts that would entitle the plaintiff to relief. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Further, the court must construe all reasonable inferences from the complaint in favor of the plaintiff. *Bontkowski*, 998 F.2d at 461. Given that Plaintiff has asserted that Defendants Adler and Fischer are memberowners of RDK and that both individual Defendants were directly responsible for work performed for RDK, it is conceivable that Plaintiff may be able to show that Adler and Fischer are personally liable for the alleged fraudulent transfer by ADF. Thus, Adler and Fischer are not yet entitled to dismissal from these Counts. But as with Count II, Counts V and VI must be amended or the individuals will be dismissed.

 The requirements for showing a fraudulent transfer under the Bankruptcy Code are analogous to those as under the Illinois Uniform Fraudulent Transfer Act. *See* 740 ILCS 160/5(a) (the "UFTA"), 11 U.S.C § 548(a)(1), and *Scholes v. Lehmann*, 56 F.3d 750, 756 (7th Cir.1995). Under both statutes, there are two possible types of fraudulent transfers that can be made by a debtor: (1) transfers made with the intent to defraud creditors: and (2) transfers made for insufficient value while the debtor was insolvent or that rendered the debtor insolvent, the first being "fraud in fact," the second being "fraud in law." Transfers are classified as fraudulent in fact when the debtor had the requisite intent to defraud its creditors. For fraud in law, debtor's intent is not relevant because the transfer was essentially made for inadequate consideration either while the debtor was insolvent, or the debtor was made insolvent as a result of the transfer. *Scholes*, 56 F.3d at 756–57. One key difference between the UFTA and Section 548 of the Bankruptcy Code is that under the Code only transfers that occur within one year before filing of the bankruptcy petition are avoidable. However, the Illinois UFTA has a four-year statute of limitations. *See* 11 U.S.C § 548(a)(1) and 740 ILCS 160/10(a).

SIPC seeks to recover under the fraud in law theory. It wants to recover $25,000 that it alleges RDK paid ADF to investigate the Carney fraud. SIPC avers that RDK was insolvent when it engaged ADF to perform this work and that ADF did not perform any services in exchange for the payment from RDK. Defendants counter that SIPC's claim under § 548 is time-barred because the complaint alleges that the transfer occurred more than one-year prior to the bankruptcy. However, as stated above, SIPC alleges that ADF was engaged on April 27, 1998, to perform the special audit and that the $25,000 payment was made after June 30, 1998. SIPC filed its liquidation petition on June 2, 1999, within less than a year after the payment was made. Section 78fff(b) establishes this date as the "filing date of the petition" under § 548(a)(1) of the Code. 15 U.S.C. 78fff(b). Thus, SIPC's attempt to recover

the alleged fraudulent transfer is not time-barred under § 548(a)(1).

*Standing of SIPC*

█ Defendants contend that even if SIPC avers the elements needed for the foregoing causes of action, the Adversary Complaint must nonetheless be dismissed because SIPC lacks standing to bring these claims on behalf of a third-party. Defendants cite *Indemnified Capital Investments v. R.J. O'Brien Assoc.*, 12 F.3d 1406, 1410 (7th Cir.1993) for support. However, Defendants' reliance on *Indemnified* is misplaced. In *Indemnified*, an investment company was found not to have standing to sue on behalf of its defrauded customers. But here, SIPC is utilizing the powers of a Chapter 7 trustee in bankruptcy to represent the interests of RDK. Section 78fff–1 of SIPA vests SIPC with powers of a trustee in a Chapter 7 bankruptcy. 15 U.S.C. § 78fff–1(a). Thus, SIPC, as representative of the RDK's estate, is empowered to bring any cause of action that RDK as a bankruptcy debtor or its Trustee in a putative Chapter 7 bankruptcy case could have brought against Defendants. *Matter of Perkins*, 902 F.2d 1254, 1257 (7th Cir.1990) (under 11 U.S.C. § 323 the trustee is the representative of the debtor and bankruptcy estate and as such can sue or be sued); *Regan v. Vinick & Young(In re Rare Coin Galleries of Am., Inc.)*, 862 F.2d 896, 901 (1st Cir.1988).

. SIPC does not seek to assert claims as a subrogee for net equity payments made to RDK's customers, as it is allowed to do under SIPA. 15 U.S.C § 78fff 3(a); *Securities Investor Corp. v. BDO Seidman, LLP*, 49 F.Supp.2d 644, 653 (S.D.N.Y.1999) (SIPC had standing to sue accountants as subrogee of customer claims) *affd' by Securities Investor Corp. v. BDO Seidman, LLP*, 245 F.3d 174 (2nd Cir.2001). Rather, SIPC is merely stepping into the shoes of RDK and seeking to recover on behalf of RDK's estate which is treated here as would a bankruptcy estate. Thus, the correct inquiry is whether RDK or its putative Chapter 7 bankruptcy trustee could have brought the aforementioned causes of action against Defendants. Based on Complaint allegations, it is clear that RDK and such a Trustee could have brought the aforementioned claims against Defendants. Thus, SIPC has standing to do the same.

*Doctrine of Imputation*

█ Alternatively, Defendants argue that even if SIPC has standing to pursue this case as a trustee for RDK, the Complaint is still barred under the doctrine of imputation. Under that doctrine, fraudulent acts committed by officers of a corporation which are aimed at benefitting the corporation are imputed to the corporation. *Banco Latino Int'l v. Gomez Lopez*, 95 F.Supp.2d 1327, 1335–36 (S.D.Fla. 2000). Illinois courts have applied this doctrine to bar plaintiffs from recovery in accountant malpractice cases where (1) the complaint alleges sufficient facts to establish that the officers and directors of an audited company knowingly performed misdeeds that the accountant is charged with; and (2) that such actions by the corporation's top management amounted to fraud on behalf of the corporation. *First National Bank of Sullivan v. Brumleve and Dabbs*, 183 Ill.App.3d 987, 132 Ill.Dec. 314, 539 N.E.2d 877, 881 (4th Dist. 1989) (citing *Holland v. Arthur Andersen & Co.*, 127 Ill.App.3d 854, 82 Ill.Dec. 885, 469 N.E.2d 419, 426 (1st Dist.1984)). Defendants argue under this doctrine that SIPC cannot shift losses incurred by RDK to its auditors where RDK profited from the wrongdoing that caused those losses. Defendants reason that RDK received a commission on each unauthorized trade made by Carney, and therefore Carney's conduct should be imputed to RDK to bar the present claim. Defendants rely on

*Cenco v. Seidman & Seidman,* 686 F.2d 449 (7th Cir.1982) for support.

However, as SIPC correctly points out, this is really a defensive argument that Carney's imputed conduct is in *pari delicto* with the conduct asserted against Defendants. *Cenco* was a fact intensive review of the record following trial, and *Cenco* type issues cannot be resolved on a motion for dismissal under Fed.R.Civ.P. 12(b)(6). *See Diamond Mortgage Corp. v. Sugar,* 913 F.2d 1233, 1248 (7th Cir.1990). Trial and all the facts revealed thereat must disclose whether this defense will be pleaded and proved.

*Damages*

Finally, Defendants argue that RDK's damages should be limited to losses during the six weeks following completion of the 1997 audit because RDK was already insolvent when that audit began. It also argues that SIPC seeks to recover from potential liability of RDK to its customers and raises objections to such damage claims.

Arguments of Defendants as to possible damages do not entitle them to dismissal. Such arguments will be considered at trial should issues as to damages be reached.

### *CONCLUSION*

Based on the foregoing, Plaintiff will be given a time limit designated by separate order to amend Counts II, III, V and VI as to the individual Defendants, otherwise the individual Defendants will be dismissed from those Counts and Count III will be dismissed. The Defendant's Motion is otherwise denied. However, Defendants will not be ordered to file an Answer until Plaintiff has been given time to file the amended Counts.