In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3770

RONALD R. PETERSON, as Chapter 7 Trustee for
the estates of Lancelot Investors Fund, L.P., *et al.*,

*Plaintiff-Appellant*,

*v.*

MCGLADREY & PULLEN, LLP, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 274—**Elaine E. Bucklo**, *Judge*.

ARGUED SEPTEMBER 8, 2011—DECIDED APRIL 3, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and SYKES,
*Circuit Judges*.

EASTERBROOK, *Chief Judge*. In 2002 Gregory Bell estab-
lished five mutual funds, known as the Lancelot or
Colossus group. We call them "the Funds." They
raised about $2.5 billion, which they reinvested in busi-

nesses such as Thousand Lakes, LLC, that claimed to act as commercial factors. (For simplicity we use Thousand Lakes as the only exemplar.) The Funds told their investors that Thousand Lakes loaned money to operating businesses on the security of their inventories.

Most of the firms to which the Funds routed money were controlled by Thomas Petters. He was running a Ponzi scheme. There was no inventory. Thousand Lakes did not finance any business transactions. Instead Petters used new investments in Thousand Lakes to pay older debts, siphoning off some of the money for his own use. Ponzi schemes must grow in order to survive, and there always comes a time when growth cannot be sustained. When Petters was caught in September 2008, the Funds collapsed; about 60% of the money had vanished. The Funds entered bankruptcy, and Ronald Peterson was appointed as Trustee to marshal and distribute what assets remained.

Peterson filed this action under Illinois law against the Funds' auditor, McGladrey & Pullen, LLP, and some affiliated entities. The complaint contends that McGladrey was negligent in failing to discover that Thousand Lakes lacked customers. The Funds told their investors that the venture was low risk because Thousand Lakes had established lockboxes to which payments would be made when the operating businesses sold any of their inventory. Peterson's complaint alleges that McGladrey did not detect that the money entering these lockboxes came from Thousand Lakes itself, not from customers of the phony businesses

whose inventory Thousand Lakes supposedly financed. The Trustee maintains that an auditor must perform spot checks that will find such deceptions. (To be more precise, one part of an auditor's job is to determine whether the client's financial controls are sufficient to catch deceits practiced against it; otherwise the auditor cannot be sure that the client's financial statements accurately represent its condition. Auditors must do some independent verification to learn whether the client's controls are working.)

The district court dismissed the complaint without deciding whether the auditor had done its task competently. 2010 U.S. Dist. LEXIS 117018 (N.D. Ill. Nov. 3, 2010). The judge invoked the doctrine of *in pari delicto*—the idea that, when the plaintiff is as culpable as the defendant, if not more so, the law will let the losses rest where they fell. Illinois applies this doctrine to suits by clients against their auditors, because a participant in a fraud cannot claim to be a victim of its own fraud. See *First National Bank of Sullivan v. Brumleve & Dabbs*, 183 Ill. App. 3d 987 (1989); *Holland v. Arthur Andersen & Co.*, 127 Ill. App. 3d 854 (1984); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 454–55 (7th Cir. 1982) (Illinois law). The Funds knew what Bell knew, for he was the head of their management company and investment adviser. See *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375 (7th Cir. 2010) (discussing imputation of knowledge in corporate law). So if Bell was in on Petters's scam, then the Funds have no claim against McGladrey for failing to detect and warn the Funds about something that Bell, and thus the Funds, already understood. See *Community*

*College District No. 508 v. Coopers & Lybrand*, 208 Ill. 2d 259 (2003). Trustee Peterson stepped into the shoes of the Funds under 11 U.S.C. §541(a) to collect property of the estate—here, the estate's chose in action against its auditor. The Trustee's claims are subject to the same defenses that McGladrey could have asserted had the Funds themselves filed suit. (Which is to say, this is not an avoiding action to recoup any transfer from the Funds to McGladrey, an action in which a bankruptcy trustee can take the part of any hypothetical lien claimant, see 11 U.S.C. §544; nor is it an action on behalf of investors. Cf. *Grede v. Bank of New York Mellon*, 598 F.3d 899 (7th Cir. 2010). This makes it unnecessary to consider limits that Illinois law places on investors' efforts to make direct claims against auditors.)

The district court concluded that Bell was in the know about the Ponzi scheme. The Trustee alleges that Bell joined forces with Petters in February 2008. In October 2009 Bell pleaded guilty to wire fraud. Petters stood trial and was convicted of multiple federal crimes. Because Bell is criminally culpable for fraud, the district court concluded that the Funds lack a claim against their auditor.

The crime to which Bell pleaded guilty occurred in 2008. The Trustee's complaint alleges that Bell began to conspire with Petters in February 2008—and that, until then, Bell honestly (though carelessly and perhaps even recklessly) believed that Thousand Lakes was a real commercial factor and that the Funds' investments had been successful. The Trustee does not seek damages

on account of anything the auditor did or omitted in 2008; the suit relates to McGladrey's audit of the Funds' financial statements in 2006 and 2007. The Trustee's theory is that, if McGladrey had done what it was supposed to do, the Ponzi scheme would have been exposed earlier, and the Funds would not have thrown so much money down the drain in 2007 and 2008. The district court apparently supposed that, if Bell was criminally culpable in 2008, then surely he knew about the Ponzi scheme earlier. But this is not something a court can assume at the complaint stage of litigation. The court must accept the complaint's allegations—and the Trustee expressly alleges that, until February 2008, Bell did *not* know that Petters had built a house of cards.

McGladrey observes that the Trustee is trying to have things both ways. In a separate suit against Bell, the Trustee alleges that Bell committed fraud during 2006 and 2007. McGladrey contends that the district court was entitled to take the same view of matters in the Trustee's suit against it. But there's no rule against inconsistent pleadings in different suits, or for that matter a single suit. "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). What's more, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). So if we understand the Trustee to be alleging that Bell both did, and did not, know of Petters's fraud in 2006 and 2007, the pleading

is sufficient if *either* allegation is sufficient. An allegation that Bell was negligent but not criminally culpable in 2006 and 2007 makes the claim against McGladrey sufficient; the complaint therefore cannot be dismissed on the ground the district court gave. (If the Trustee had prevailed against Bell on a theory that his fraud began in 2006, then the doctrine of judicial estoppel would block the Trustee from arguing an inconsistent position against McGladrey. See *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1547-48 (7th Cir. 1990). But the suit against Bell is pending; the requirements of judicial estoppel are unmet.)

Trustee Peterson asks for relief broader than a remand to determine what Bell knew, and when he knew it. The Trustee asks us to knock out the *pari delicto* defense altogether, so that the culpability of a corporate manager never would bar recovery against a negligent auditor. *Holland* shows that Illinois would allow the defense if a receiver for the Funds were suing under state law, but the Trustee contends that federal law prevents its application once a firm enters bankruptcy and a trustee is appointed. The National Association of Bankruptcy Trustees has filed a brief as *amicus curiae* supporting this position. Illinois has limited the defense on public-policy grounds in some circumstances as a matter of its domestic law. See *McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565 (2009) (*in pari delicto* does not apply to insurance liquidator's claims against auditors); *Albers v. Continental Illinois Bank & Trust Co.*, 296 Ill. App. 596 (1938) (*in pari delicto* inapplicable to bank receiver).

But the Trustee and the Association pitch their argument on federal bankruptcy law. They use *McRaith* and *Albers* to support the proposition that McGladrey can be liable if Bell was negligent but did not commit fraud, but that's different from the question whether federal law supersedes state law when the state would allow a *pari delicto* defense.

Section 541(a) provides that an estate in bankruptcy includes all of the debtor's "property", a word that comprises legal claims such as the one against McGladrey. "Property" normally is defined by state law—and in Illinois a claim for damages is limited by defenses such as *in pari delicto*. The Trustee and the Association want us to hold that a bankruptcy estate includes rights of recovery, stripped of their defenses. If *in pari delicto* is out, presumably the statute of limitations would be out too, or maybe even the defense of accord and satisfaction. As the Trustee and the Association see things, "public policy" favors greater recoveries for estates in bankruptcy, so that more money is available for distribution and so that wrongdoing by a corporation's "gatekeepers" (the accountants as well as Bell) may be deterred more effectively.

This is not a new argument. It was advanced and rejected in *Butner v. United States*, 440 U.S. 48 (1979). The Court held that state law defines the "property" that enters the bankruptcy estate, unless a provision in the Bankruptcy Code displaces state law. *Butner* did not deal with §541 or the *pari delicto* defense, but its principle is general. See, e.g., *Raleigh v. Illinois Department of*

*Revenue*, 530 U.S. 15, 20 (2000) ("The 'basic federal rule' in bankruptcy is that state law governs the substance of claims, *Butner*, *supra*, at 57, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law,' 440 U. S., at 54"). Bankruptcy is a means of administering claims that are defined by tort, contract, and other generally applicable bodies of law. Congress has modified these claims in some respects, and changed some distribution priorities, but unless the Code makes such an alteration the job of the bankruptcy court is to gather all of the debtor's assets, as state law defines those assets, and distribute them according to the creditors' rights under state law. In the main, bankruptcy law is designed to provide a single forum for resolving competing claims to assets defined by other bodies of law.

Neither the Trustee nor the Association identifies any provision of the Code that overrides state-law limits on the legal claims created by state law against the debtor's auditors. "Public policy" is not a ground on which the federal judiciary may create such a limit—not unless the Supreme Court first overrules *Butner*, *Raleigh*, and similar decisions. We therefore agree with the conclusion of every other court of appeals that has addressed this subject and hold that a person sued by a trustee in bankruptcy may assert the defense of *in pari delicto*, if the jurisdiction whose law creates the claim permits such a defense outside of bankruptcy. See *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006); *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267

F.3d 340, 357 (3d Cir. 2001); *In re Hedged-Investments Associates, Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996).

According to the Trustee, *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995), commits this court to a contrary position. Like today's case, *Scholes* arises from a Ponzi scheme. The Securities and Exchange Commission appointed a receiver to marshal the assets of one participant in the scheme. The receiver sought to recover some payments as fraudulent conveyances—for one aspect of a Ponzi scheme is handsome but unearned payments to early investors, who then drum up pigeons with promises of hefty and risk-free profits. Some recipients of these payments invoked an equitable defense, observing that the principal fault lay with the scheme's mastermind, to which we replied that, although recovery would indeed have been inequitable while the crook was running the show, recovery of fraudulent transfers is entirely appropriate once the crook is gone and the recovery will benefit duped investors. We added: "Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated."

That sentence is dictum; *Scholes* did not entail a *pari delicto* defense. It has nothing to do with §541 of the Bankruptcy Code; *Scholes* was not a bankruptcy proceeding. And it does not stand for the proposition that federal law overrides state-law defenses; *Scholes* was decided under Illinois law, which, as we have observed, puts the *pari delicto* defense out of bounds in some situations. The state statute involved in *Scholes*

was replaced in 1990 when Illinois enacted the Uniform Fraudulent Transfer Act, 740 ILCS 160. More importantly, the law of fraudulent conveyances—both in Illinois and under the Bankruptcy Code, see 11 U.S.C. §§ 547–50—is one of those bodies that does supersede private-law definitions of legal entitlements. The recipient of a fraudulent or preferential transfer usually has a right to the money as a matter of contract, but when the transfer injures other creditors it can be recouped for their benefit. *Scholes* should not be generalized beyond the law of fraudulent conveyances and preferential transfers. *Scholes* did not mention *Cenco*, which applied Illinois law to block a corporation's action against an auditor when the fraud that the auditor failed to catch had been engineered by the client's managers. By the time suit began in *Cenco*, the fraudsters were long gone, but that did not clear the way for collection from the deep pockets of an auditor that had been taken in by the client's former managers.

Two other arguments in this case require only brief attention.

First, the Trustee contends that the *pari delicto* defense is inapplicable, as a matter of Illinois law, because Bell was acting adversely to the interest of the Funds. The district court sensibly concluded that *Cenco* dooms this argument. *Cenco* predicted that Illinois would hold that fraud by corporate managers is imputed to the corporation where "managers are not stealing from the company—that is, from its current stockholders—but instead are turning the company into an engine of

theft against outsiders". *Cenco*, 686 F.2d at 454. Thirty years have passed, and no court in Illinois has disagreed with this understanding. Bell was not stealing from the Funds, whether or not he was using them to snooker people who had money to invest.

Second, McGladrey defends its judgment by pointing to a clause in the engagement contract exculpating the auditor if the client (*i.e.*, the Funds) makes material misrepresentations. The Trustee asks us to ignore this clause, calling it vague. There's no "vague clause" exception to contract law, however, and anyway this clause is not vague. "Material" is one of those protean legal terms that cannot be reduced to an algorithm. If McGladrey can show that material misrepresentations made by its own client affected the performance of its duties, it receives the benefit of this clause. But it supplies a defense; its negation is not an element of a plaintiff's claim for relief. Complaints need not anticipate and plead around defenses. *Gomez v. Toledo*, 446 U.S. 635 (1980). If the complaint itself demonstrated that the Funds made material misrepresentations to McGladrey, then the Trustee could have pleaded himself out of court. The complaint does not contain any fatal admissions, however. At oral argument, counsel for McGladrey maintained that, according to the complaint, Bell told the auditor that Thousand Lakes had a lockbox mechanism for collecting money when the businesses sold their inventory. This is a "misrepresentation," however, only if Bell knew it to be false; otherwise he was just passing along what others had said, and one function of an auditor is to check whether the client is

being bilked by the likes of Petters. The state of Bell's knowledge cannot be determined at the complaint stage of this litigation.

The judgment of the district court is vacated, and the case is remanded for proceedings consistent with this opinion.