In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1986

RONALD R. PETERSON, as Trustee for the estates of Lancelot
Investors Fund, Ltd., *et al.*,

*Plaintiff-Appellant,*

*v.*

MCGLADREY LLP, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 274 — **Elaine E. Bucklo**, *Judge.*

ARGUED APRIL 16, 2015 — DECIDED JULY 7, 2015

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Gregory Bell established five
mutual funds ("the Funds"), raised about $2.5 billion, and
invested most of the money in vehicles managed by Thomas
Petters, who said that he was financing Costco's consumer-
electronics inventory. Instead he was running a Ponzi
scheme, which collapsed in September 2008. Both Bell and
Petters have been sent to prison for fraud (Bell threw in his

lot with Petters in 2008). Ronald Peterson was appointed as the Funds' trustee in bankruptcy to conserve what assets remained and recover additional assets from solvent parties who may have borne some of the fault.

Trustee Peterson has filed multiple suits, which have led to three decisions (so far) by this court. *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594 (7th Cir. 2012) (*McGladrey I*); *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741 (7th Cir. 2013); *Peterson v. Winston & Strawn LLP*, 729 F.3d 750 (7th Cir. 2013). The current appeal is *McGladrey II*.

McGladrey & Pullen (now known as McGladrey LLP) was one of the Funds' auditors. (There are other defendants; we use McGladrey as the example to simplify the exposition.) It did not perform the sort of spot checks that would have revealed that Petters had no business other than recycling investors' funds while skimming some off. Trustee Peterson contends that McGladrey is liable to the Funds under Illinois law for accounting malpractice; McGladrey insists that, if it is culpable, so are the Funds, and that the doctrine of *in pari delicto* blocks liability. We explained in *McGladrey I* that this doctrine rests on "the idea that, when the plaintiff is as culpable as the defendant, if not more so, the law will let the losses rest where they fell." 676 F.3d at 596. See also *Pinter v. Dahl*, 486 U.S. 622 (1988).

We held three things in *McGladrey I*: (i) that McGladrey cannot be liable to the Funds for failing to detect and reveal what Bell himself knew; (ii) that at this stage of the litigation Bell cannot be charged with knowing about Petters's fraud in 2006 and 2007, just because he joined it in 2008; and (iii) that federal bankruptcy law does not supersede a state-law *in pari delicto* defense. We remanded so that the district court

could resolve McGladrey's defense after developing a factual record about the state of Bell's knowledge in 2006 and 2007.

Back in the district court, McGladrey took a new tack. Instead of trying to show that Bell was in on Petters's scam before 2008, McGladrey contended that Bell had committed a fraud of his own. The documents that the Funds sent to potential investors represented that the money the Funds lent to the Petters entities was secured by Costco's inventory and that repayment would be ensured by a "lockbox" arrangement under which Costco would make its payments into accounts that the Funds (rather than Petters) would control. Bell has admitted that this is not how the arrangement worked, and that he knew this from the outset. The money in the accounts came, not from Costco, but from a Petters entity known as PCI. This meant that the Funds had no assurance that Costco was the source of the money placed in the lockbox accounts, and no assurance that Petters would continue paying. Indeed, it was materially misleading to use the word "lockbox," which in commercial factoring is understood as a device to ensure that third parties do not intercept the merchant's payments. Yet, Bell concedes, he caused the Funds to lie to actual and potential investors, thinking (no doubt correctly) that they would feel more secure if they believed that money came directly from Costco and that repayment was outside Petters's control.

The district court concluded that the Funds' misconduct (the documents were issued in the Funds' names and are their responsibility, see *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)) was at least equal in gravity to McGladrey's, if not a greater fault—for the Trustee

does not accuse McGladrey of fraud. What's more, the court concluded, the Funds' representations and McGladrey's errors (if any) led to the same loss: investors' money went down a rabbit hole. Either truth by the Funds (leading to smaller investments), or McGladrey's discovery of Petters's scam, would have protected the investors from loss during 2006 and 2007, when the Funds were growing rapidly. This led the court to dismiss the suit against McGladrey and the other defendants under the *in pari delicto* doctrine, without considering whether McGladrey had failed to perform its duties. *Peterson v. General Electric Co.*, 2014 U.S. Dist. LEXIS 48688 (N.D. Ill. Apr. 8, 2014).

Trustee Peterson concedes that Bell and the Funds made false statements to prospective investors (though the Trustee denies that the falsity amounts to fraud). But he insists that the *pari delicto* doctrine in Illinois applies only when the plaintiff and the defendant commit the *same* misconduct. If they commit different misconduct that contributes to a single loss then, according to the Trustee, the *pari delicto* doctrine drops out.

The Trustee does not refer to any case in Illinois stating such a principle, however. He has found, and quotes, lots of language saying that the doctrine applies when two parties commit or abet a single wrong—see, e.g., *Vine St. Clinic v. Healthlink, Inc.*, 222 Ill. 2d 276, 297 (2006) ("the law will not aid either party to an illegal act, but will leave them without remedy as against each other")—but he has not found any decision holding or even saying in *dictum* that it applies *only when* two parties participate in a single wrong.

As far as we can tell, Illinois regularly disallows litigation between one wrongdoer (here, Bell and the Funds) and an-

other (here, McGladrey) whose acts may have added to the loss or failed to reduce it. See, e.g., *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 206 (1989); *Neuman v. Chicago*, 110 Ill. App. 3d 907, 910 (1982); *Wanack v. Michels*, 215 Ill. 87, 94–95 (1905). These decisions involve contribution or equitable apportionment and do not use the phrase "*in pari delicto*," but they conclude that a wrongdoer cannot recover compensation from a third party who may have made things worse or missed a chance to avert the loss. Other decisions in Illinois take the same view through still other language. See *Mettes v. Quinn*, 89 Ill. App. 3d 77 (1980) (client cannot recover from attorney for attorney's advice to commit fraud, when harm to plaintiff was the result of her own fraud); *Robins v. Lasky*, 123 Ill. App. 3d 194 (1984) (client cannot recover from attorney for advice to establish residence outside of Illinois to avoid service of process).

The Supreme Court summed up the *pari delicto* doctrine as comprising two principles: "first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (footnote omitted). Both principles apply to a claim by the Funds, which raised money via deceit, against an auditor that negligently failed to detect a different person's fraud. (The Trustee is litigating on behalf of the Funds and is subject to all defenses McGladrey has against the Funds.)

All ways of looking at the subject lead to the same conclusion. The Trustee has not found any Illinois case saying that the *in pari delicto* defense applies only when the two litigants have committed the same wrong, as opposed to one

failing to mitigate the consequences of the other's wrong. And the Trustee has not found any case in Illinois recognizing liability under this situation, no matter what name applies.

Foreclosing all liability when two parties commit distinct wrongs might seem to allow the failure of one safeguard to knock out others. Corporate and securities law rely on both managers and accountants to protect investors' interests. There would be a major gap in those bodies of law if, when one turns out to be a scamp, then the other is excused from performing his own duties, and investors are left unprotected. But that's not the outcome of applying the *pari delicto* doctrine to the Trustee's suit. The Trustee stepped into the shoes of the Funds, not the shoes of the investors. People who put up money have their own claims.

Claims against Bell may not be worth much (he's in prison), and securities-law claims against the Funds for misstatements in the offering documents aren't worth much either (they're bankrupt), but a claim against McGladrey may offer some recompense, if the auditor was indeed negligent or wilfully blind. See 225 ILCS 450/30.1(2); *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 837–38 (7th Cir. 2007) (Illinois law); *Kopka v. Kamensky & Rubenstein*, 354 Ill. App. 3d 930, 935 (2004); *Builders Bank v. Barry Finkel & Associates*, 339 Ill. App. 3d 1, 7 (2003). Proceedings on the investors' claims have been stayed pending resolution of the Trustee's suit. It is time to bring the investors' claims to the fore.

AFFIRMED