In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 15-3446

SAMARON CORP., doing business as Troyer Products,

*Plaintiff-Appellant*,

*v.*

UNITED OF OMAHA LIFE INSURANCE COMPANY,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:12-CV-397 — **Rudy Lozano**, *Judge*.

———————————

ARGUED APRIL 1, 2016 — DECIDED MAY 17, 2016

———————————

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In 2003 Troyer Products (formally Samaron Corp.), a closely held corporation, purchased a policy of insurance on the life of Ron Clark, then its President. Dave Buck, its COO, was the beneficiary. Clark, who approved the transaction, thought that the death benefit of $1 million would enable Buck to buy out his stock, so that the money would end up in the hands of Clark's family

while Buck would come to control the company. United of Omaha Life Insurance Company initially wrote the policy that way, but it was soon amended so that the death benefit would go to Troyer. (One side says that United's underwriting department insisted on this change, the other that tax considerations dominated; the reason does not matter now.) Troyer did not undertake by contract to turn the death benefit over to Buck, but both Buck and Ron Clark's wife Darlene recall that this was the plan.

In 2005 Clark retired and sold a controlling interest to Dan Holtz, who became the firm's new President. Buck remained as COO. After this transaction Holtz owned 61% of the stock and Buck the rest. As part of his purchase, Holtz received a copy of the policy, including the amendment naming Troyer as the beneficiary. Another copy was in Troyer's files. Clark died in November 2011. Buck told Holtz that Troyer was the beneficiary, but when Holtz called United he was told that the money would be paid to Buck—and it was. When Buck tried to use the proceeds to buy Holtz's stock, he was removed from the board and soon quit as COO. Troyer filed this suit under the diversity jurisdiction, contending that the benefits should have been paid to it. United, not wanting to pay $2 million on a $1 million policy, has resisted despite conceding that Troyer was indeed the policy's beneficiary.

What had gone wrong came out during discovery. United makes electronic copies of its policies. Once policies have been issued, its staff normally works from the electronic file. Each document receives a code, making it easier for the staff to know what to look for. As we have mentioned, the first version of the policy named Buck as the beneficiary, but that

was changed by amendment. Whoever added the amendment to the electronic file misclassified it as a "Post-Issue Requirement" rather than as a change of beneficiary. When Holtz called after Clark's death, one of United's employees looked at the electronic copy of the policy, saw Buck as the beneficiary, and looked for the code denoting an amendment changing the beneficiary. Not finding one, he told Holtz that the death benefit would be paid to Buck. In discovery, this employee testified that it had not occurred to him to look at a document tagged as a "Post-Issue Requirement." But someone eventually went through the whole file and found the amendment, which led to this suit.

United acknowledges its error in paying Buck. But it does not acknowledge liability. It maintains that Troyer knew the truth and allowed Buck to claim the money, carrying out the plan that Clark and Buck had devised in 2003. United observes that Troyer's corporate files contain a copy of the amendment, and Holtz's personal files contain another. It's their own fault for not looking, United maintains. And United adds that, at a meeting of Troyer's board soon after Clark's death, the company chose to allow Buck to receive the death benefit. After naming new members to the board, however, Holtz caused it to adopt new minutes reciting that no such decision had been made.

Believing the recording of the meeting to have been lost, the district court denied United's motion for summary judgment and set the case for trial. 2014 U.S. Dist. LEXIS 137656 (N.D. Ind. Sept. 29, 2014). Shortly after the court issued this opinion, however, Troyer admitted that it had found the recording a month earlier and turned it over to United's lawyers. The judge listened to the recording and

found it dispositive. At the meeting Buck repeatedly told Holtz that Troyer was the policy's beneficiary, yet with this knowledge the board unanimously opted to allow Buck to receive the money. The judge found that the minutes of this meeting had been falsified by Holtz's new appointees and that Holtz's fervent denial that he knew the policy's true beneficiary is conclusively refuted by the recording. The judge granted United's motion to reconsider and entered summary judgment in its favor.

Troyer's appellate brief insists that Holtz was misled by United's error and had no reason to think that Troyer was the policy's beneficiary. We agree with the district court that this proposition is untenable in light of the statements Buck made at the board meeting. Buck told Holtz to his face that Troyer was the policy's beneficiary. He even pulled out a copy of the policy: "Um, beneficiary is on page 8. [Flipping through papers.] Um, let me oh, right here. [Reading] 'This policy is issued with the owner and primary beneficiary as Troyer Products, employer.'"

And if that were not enough, Troyer's files contained a copy, as did Holtz's personal files. Let us suppose, as Holtz asserts, that he refused to believe what Buck was saying and thought it unnecessary to look at the policy, in light of what United's staff had said. Still *Troyer* (the corporation) knew the truth, because its principal officers in 2003 (Clark and Buck) had negotiated the policy and were well aware of its contents. What the President and COO knew, Troyer knew. There is no such thing as corporate amnesia. *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375 (7th Cir. 2010). Turnover in a corporation's management does not wipe out the corporation's fund of knowledge. That Holtz did not

know something does not mean that Troyer the corporation was ignorant.

The fact remains that United paid the death benefit to the wrong party. United contends that Troyer waived its right to the money, and the district judge agreed. There are at least two potential ways to contest that conclusion—and Troyer does not pursue either of them.

The first would be to emphasize that, although the board discussed the issue, it did not adopt a resolution. In Indiana, whose law controls this litigation, boards act by majority vote. Ind. Code §23-1-34-5(c) (vote at meeting); cf. Ind. Code §23-1-34-2 (decision without a meeting based on written consent of all directors). Apparently Troyer conducted business informally; it operated by consensus (at least until Holtz used his 61% interest to get rid of Buck). The district judge wrote that Indiana allows corporate boards to make binding decisions by consensus, without voting on resolutions. The judge did not cite anything for this proposition, and our own search did not turn anything up. But Troyer does not contest this aspect of the district court's analysis. Pages 27–28 of Troyer's brief mention in passing that the board did not adopt a resolution waiving the firm's right to the money, but the brief does not contain any legal argument about the subject. Any potential challenge to this aspect of the district court's disposition has been forfeited.

The second way would start with the observation that the board did not choose between allowing the money to go directly to Buck and having it paid to the firm and then passed on to Buck (provided that it stayed off the books and did not cause heartburn for the firm's accountant). But Troyer does not make anything of this either. It does not contend

that direct payment to Buck had adverse tax consequences for the firm. Nor has a tax collector or creditor appeared to argue that, had the money passed through the firm's coffers, it would have had first dibs. So the board's failure to decide exactly *how* the money would end up in Buck's hands does not matter.

From beginning to end, Troyer's brief rests on the assertions that Holtz was misled by United and did not know that Troyer was the policy's beneficiary. That approach commits the legal error of confusing Holtz with Troyer; the corporation's knowledge, not Holtz's, is what matters. And it commits the factual error of ignoring what happened at the board meeting, where Buck made sure that everyone present knew that Troyer was legally entitled to the proceeds. If this left Troyer the corporation, or Holtz personally, in a state of confusion, either could have had a lawyer investigate and clear things up. Instead the board elected to let the money go to Buck, and we have explained why the route it took to get there does not matter.

Affirmed